# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRENDA WOOD, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | CASE NO. |
| CORECIVIC, INC., f/k/a CORRECTIONS CORPORATION OF AMERICA, Please Serve Registered Agent: The Corporation Company, Inc. 112 SW 7th Street, Suite 3C Topeka, KS 66603 ) ) ) ) ) ) ) | |
| And ) ) | |
| LINDA THOMAS, c/o CCA-Leavenworth 100 Highway Terrace Leavenworth, KS 66048 ) ) ) ) ) | |
| and ) ) | |
| DOE AGENCY/ENTITY 1 AND 2, ) ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff Brenda Wood, by and through counsel, and for her causes of action against CoreCivic, Inc., f/k/a Corrections Corporation of America, Linda Thomas and Doe Agencies/Entities 1-2, states as follows:

### I.     NATURE OF ACTION

1.     Defendants systematically disenfranchised hundreds of eligible voters held at CCA-Leavenworth during the 2016 general election, and every other regular election held during

their detention, by refusing to provide them absentee ballots or alternative access to the polls.[1]

2. Defendants' acts violated the fundamental rights of Plaintiff and the class members under the Fourteenth Amendment to the United States Constitution.[2]

3. Plaintiff, and members of the class, bring this action for damages, declaratory and injunctive relief to redress the deprivation under color of state law of rights secured by the Fourteenth Amendment to the U.S. Constitution via 42 U.S.C. § 1983 ("Section 1983").

## II. PARTIES

4. Plaintiff Brenda Wood is an individual residing in Leavenworth County, Kansas, and was held at CCA-Leavenworth as a pre-trial federal detainee.

5. Defendant CoreCivic, Inc. ("CCA-Leavenworth") (formerly known as Corrections Corporation of America, Inc.) is a Maryland corporation registered to transact business in Kansas, transacting business in Kansas and available for service of process via registered agent The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

6. CCA-Leavenworth is a publicly traded real estate investment trust and a for-profit prison owner and operator of private prisons nationwide.

7. CCA-Leavenworth manages or owns more than 70 correctional and detention facilities with a capacity of approximately 70,000 beds in 19 states and the District of Columbia. CCA-Leavenworth is the fifth-largest corrections system in the nation, behind only the federal

---

[1] *See O'Brien v. Skinner*, 414 U.S. 524, 530 (1974) (Individuals held in a county jail who are "not allowed to use the absentee ballot and are denied any alternative means of casting their vote although they are legally qualified to vote" suffer "a restriction which is so severe as itself to constitute an unconstitutionally onerous burden." (citation and internal quotes omitted); *See also U.S. v. Olinger*, 759 F.2d 1293, 1304-05 (7th Cir. 1985).
[2] *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (The right to vote "is of the most fundamental significance under our constitutional structure.").

government and three states, and has annual revenue in excess of $1.7 billion.

8. CCA-Leavenworth owns and operates a maximum-security state and federal pre-trial detention facility located at 100 Highway Terrace, Leavenworth, KS 66048 ("CCA-Leavenworth").

9. Defendants operate CCA-Leavenworth under contract with governmental entities for the housing of pre-trial detainees and as such, Defendants perform public functions traditionally reserved to the state and are therefore subject to suit under 42 U.S.C. § 1983.

10. Defendant Linda Thomas is an individual residing in Kansas and the employed Warden of CCA-Leavenworth.

11. Defendant Thomas was the Warden at CCA-Leavenworth during the November 2016 general election.

12. Doe Agencies/Entities 1 and 2 are as-yet unknown governmental agencies and entities responsible for the housing, custody and safe-keeping of pre-trial detainees, and the identities of these agencies/entities will become known during discovery in this case. Plaintiff reserves the right to amend her complaint to specifically name these agencies/entities.

### III. JURISDICTION AND VENUE

13. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

14. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332 because:

a. This is a civil action filed pursuant to Fed. R. Civ. P. 23 brought by one or more representative persons as a class action;

b. The amount in controversy of all class members in the aggregate is believed to exceed the sum or value of $5,000,000.00, exclusive of interest and costs;

c. Many members of the putative class are citizens of states other than Maryland and Kansas, the states of Defendants' residency, and

      d.      All other factual conditions precedent necessary to empower this Court with subject matter jurisdiction and personal jurisdiction have been satisfied.

15.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District, and Defendants transact substantial business in this District and have sufficient contacts with this District to justify being fairly brought into this District.

## IV.   FACTS

16.      Between October and November 8, 2016, Defendants repeatedly and systematically denied individuals detained at CCA-Leavenworth the opportunity to vote in the 2016 general election.

17.      Plaintiff and members of the putative class had the right to vote in the 2016 general election despite being detained in the CCA-Leavenworth.

18.      Under the U.S. Constitution and state law, and as applied by state law, an incarcerated individual otherwise eligible to vote is not deprived of the right of suffrage unless convicted of a felony crime.

19.      Hundreds of individuals are incarcerated at CCA-Leavenworth at any given time and of those detainees, the majority are not convicted felons.

20.      The majority of detainees at CCA-Leavenworth on November 8, 2016, therefore, unless otherwise legally restricted, were eligible to vote in the 2016 general election.

21.      On November 1, 2016, early, in-person voting began in Leavenworth County and lasted until November 7, 2016.

22.      In-person early voting locations in Leavenworth County included the Leavenworth County Courthouse, located approximately three-and-one-half miles from CCA-

Leavenworth.

23. Between October 19, 2016 and November 7, 2016, voters in Leavenworth County were also eligible to vote by absentee/advance ballot.

24. Beginning on October 19, 2016, eligible voters could request an advance ballot be mailed to them.

25. On October 19, 2016, voting for individuals confined by disability or other impairment began. These voters were eligible to vote at their place of confinement.

26. On November 8, 2016, the 2016 federal and state general election was held.

27. Inmates at CCA-Leavenworth during this period of time in October and November 2016 were not permitted to vote by absentee ballot, in-person voting or any other means.

28. Between October and November 2016, Defendants repeatedly and systematically through policy, practice, procedure, and custom, or failure to supervise and train their employees, denied Plaintiff and the class members the opportunity to vote in the November 8, 2016 general election. As a result of Defendants' policy and practices, Plaintiff and the class members were disenfranchised.

29. Defendant did so by refusing to provide Plaintiff and class members with transportation or accommodations to vote in-person or by absentee ballot.

30. Plaintiff and class members could not, by themselves, vote in-person because they were involuntarily detained by Defendants at CCA-Leavenworth.

31. Prior to November 27, 2014, Plaintiff regularly voted in elections and had just voted in the November 2014 general election.

32. On November 27, 2014, Plaintiff was taken into custody by the U.S. Marshal Service and transferred to CCA-Leavenworth to be held pending trial of federal criminal charges.

33. Upon arrival at CCA-Leavenworth, Plaintiff and class members were given introduction and initiation instructions on policy and procedure at CCA-Leavenworth.

34. Upon arrival at CCA-Leavenworth, Plaintiff and class members were given written materials, called the Inmate Handbook, containing policies and procedures for CCA-Leavenworth.

35. At no point during the oral instructions and initiation provided to Plaintiff and the class members did Defendants instruct them on how to vote or how to otherwise exercise their right to vote while at CCA-Leavenworth.

36. Nowhere in the Inmate Handbook provided to Plaintiff and the class members did Defendants explain how detainees can vote or otherwise how they may exercise their right to vote while at CCA-Leavenworth.

37. Indeed, the only reference to "voting" provided to detainees at CCA-Leavenworth is an instruction in the Inmate Handbook on how to vote for television programs to watch on facility TVs.

38. Plaintiff contacted her CCA-Leavenworth case supervisor prior to the November 8, 2016 general election and asked for assistance in obtaining an advance ballot in order to vote.

39. Plaintiff's case worker, an employee of CCA-Leavenworth and under the supervision of Defendant Thomas, informed Plaintiff that, "we don't do that here."

40. Plaintiff asked Defendants on several other occasions for access to vote or assistance in exercising her right to vote, and was informed on each occasion that Defendants would not do so.

41. Plaintiff's situation is not unique; detainees at CCA-Leavenworth would routinely ask for access to vote or for help obtaining an advance ballot, and such requests were routinely denied. Indeed, Defendants' voter suppression was a common grievance discussed in the

population of detainees at CCA-Leavenworth.

42. Plaintiff and the class members could not vote by absentee ballots if they were unable to obtain them, and if they were unable to obtain them, their right to vote was infringed if not otherwise accommodated in the same manner as similarly situated eligible voters.

43. Upon information and belief, the Leavenworth County Election Office has <u>never</u> sent or delivered an absentee ballot to a detainee at CCA-Leavenworth, and never received a request for such ballot.

44. Because they were being involuntarily detained, Plaintiff and the class members could not physically vote at an appropriate voting location without assistance from Defendants.

45. Because of Defendants' conduct, Plaintiff and the class members were unable to vote in the November 8, 2016 general election, or any other regularly held election during their detention at CCA-Leavenworth.

46. As a result of Defendants' policies, acts, and omissions, Plaintiff and class members were disenfranchised and prevented from voting in all federal, state, and local elections held on November 8, 2016.

## V. CLASS ACTION ALLEGATIONS

47. Plaintiff, as the proposed representative of the putative class, brings this action pursuant to Federal Civil Rule of Procedure 23 on behalf of herself and all others similarly situated as a member of the following proposed class:

> All individuals held at CCA-Leavenworth on November 8, 2016 who on that date were U.S. citizens, residents of Kansas, were at least eighteen years of age, were not serving a sentence for conviction of a felony crime, had not previously voted in the 2016 general election, were provided neither an absentee ballot nor transportation to a voting center, and were registered to vote or had been denied the opportunity to register to vote while held at CCA-Leavenworth.

48. Upon information and belief, the class referenced above includes hundreds of

putative class members and therefore, the class is so numerous that joinder of all members of the class would be impractical.

49. The claims for relief asserted herein on behalf of Plaintiff and the putative class members present questions of law and fact common to the class, including:

    a. Whether Defendants barred eligible voters held at CCA-Leavenworth available means of casting a ballot in the 2016 general election;

    b. Whether Defendants caused eligible voters held at CCA-Leavenworth harm when they denied them available means of casting a ballot in the 2016 general election;

    c. Whether Defendants' policies and practices described within this Complaint were unlawful;

    d. Whether Defendants' actions were willful and/or intentional;

    e. The amount of damages appropriate for Plaintiff and the Class;

    f. Whether injunctive relief is warranted to prevent Defendants from causing future harm.

50. The claims of the Plaintiff are typical of the claims of the putative class in that:

    a. Plaintiff and the putative class members were all detained at CCA-Leavenworth;

    b. Plaintiff and the putative class members were all subjected to the same unlawful disenfranchisement practices, policies and procedures of Defendants, and

    c. The facts common to Plaintiff and the putative class members give rise to the same claims asserted in this Complaint.

51. Plaintiff, as representative for the putative class, will fairly and adequately protect the interests of the putative class because:

    a. Plaintiff has knowledge regarding the facts and circumstances that give rise to her claims and the claims of the putative class members;

    b. Plaintiff is strongly interested and highly motivated to assert and protect her own rights and the rights of the putative class in a vigorous fashion; and

    c. Plaintiff has retained class counsel with substantial experience and expertise in class actions, commercial litigation and business litigation and which have the

necessary and requisite resources. These law firms will vigorously assert and protect the interests of the putative class members.

52. The questions of law and/or fact common to Plaintiff and the putative class members predominate over any questions affecting only individual members of the class, and a class action as asserted herein is superior to other available methods for the fair and efficient adjudication of this controversy, in that, among other elements:

   a. The interests of Plaintiff and the interests of individual class members in controlling the prosecution of separate actions are outweighed by the advantages of adjudicating the common issues of fact and law by means of a class action;

   b. Upon information and belief, there are no pending certified class actions concerning the controversy at issue or the claims asserted in this case applicable to Plaintiff, or the putative class members set forth herein;

   c. Concentrating litigation of these claims in this forum is desirable because it will prevent and avoid a duplication of effort and the possibility of inconsistent results, and this forum represents an appropriate forum to settle the controversy based on the location of Plaintiff, the spread of putative class members and the location where the unlawful wiretap conduct occurred, and

53. Any difficulties that may be encountered in management of the class are greatly outweighed by the difficulties of handling multiple actions by individual class members; this class action is a superior method because it furthers judicial economy and efficiency and is in the best interests of Plaintiff and the putative class members.

54. There is continuing and substantial public interest in these matters.[3]

## VI.    CLAIMS FOR RELIEF

55. The right of a citizen to vote in an election is a fundamental right protected under the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. Art. I, § 2, cl. 1, Art. I, § 4, cl. 1; U.S. Const. amend. XIV-XV, XIX, XXIV, XXVI; *Purcell v. Gonzalez*, 549 U.S.

---

[3] *See O'Brien*, 414 U.S. at 533 (Marshall, J., concurring) (Denial of "absentee ballots is effectively an absolute denial of the franchise" where a defendant "is both physically preventing appellants from going to the polls and denying them alternative means of casting their ballots.").

1, 4 (2006); *Evans v. Cornman*, 398 U.S. 419, 422 (1970); *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).

56. The "[r]ight of suffrage is a civil right of the highest order and a fundamental political right . . . . No right is more precious than the right of suffrage. It involves matters close to the core of our constitutional system for free and honest elections are the very foundation of our republican form of government. Truly, other rights, even the most basic, are illusory if the right to vote is undermined." *U.S. v. Olinger*, 759 F.2d 1293, 1302-03 (7th Cir. 1985) (citations and quotations omitted).

57. State infringement on the right and ability to vote is subject to strict scrutiny review. *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 670 (1966). Administrative inconvenience cannot serve as a compelling interest or reason for restrictions on the right to vote. *Taylor v. Louisiana*, 419 U.S. 522, 535 (1975); *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969). Deprivation of the right to vote in and of itself as a matter of law causes an individual "substantial damages." *Carey v. Piphus*, 435 U.S. 247, 264 n.22 (1978); see also *Memphis Community School District v. Stachura*, 477 U.S. 299, 314-15 (1986) (Marshall, J., concurring).

58. Individuals held in jail otherwise eligible to vote are not disenfranchised by way of their detention and must be afforded "means of casting their vote." *See O'Brien v. Skinner*, 414 U.S. 524, 530 (1974). Because of this, the U.S. Supreme Court has found policies that do not allow eligible inmates to vote by absentee ballot or in person are subject to suit under the Equal Protection and Due Process clauses of the Fourteenth Amendment. *See Goosby v. Osser*, 409 U.S. 512, 513-14 (1973); *see also Tate v. Collins*, 496 F. Supp. 205, 211 (W.D. Tenn. 1980). "In decision after decision, this Court has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v.*

*Blumstein*, 405 U.S. 330, 336 (1972).

59. The right to vote may not be abridged in violation of equal protection or without due process of law and may not be discriminatorily denied to a class of individuals, including eligible voters detained in a private jail.

60. However, Defendants' policies, acts, customs, procedures, omissions, and/or failure to train and supervise their employees discriminatorily violated the fundamental right to vote of Plaintiff and class members.

61. Defendants abridged these individuals' fundamental rights without a compelling interest narrowly tailored to meet a governmental interest and absent the least restrict means of achieving any such objectives.

62. Further, no valid, neutral, or rational connection existed between Defendants' disenfranchisement of Plaintiff and the class members and any legitimate governmental interest; no alternative means aside from those sought existed for the exercise of class members' rights; accommodating Plaintiff and the class members' fundamental rights would have had only a limited impact on prison management and resources; and the obvious alternative of allowing for absentee voting or brief and structured in-person voting would have been obvious alternatives to outright denying inmates their fundamental right to vote.

63. Administrative inconvenience is not justification for denial of the fundamental right to vote.

64. Defendants' acts and omissions caused emotional distress, mental anguish, and other injury to Plaintiff and class members.

## VII.  PRAYER FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of those similarly situated, respectfully requests that the Court:

A.  Certify the class as defined;

B.  Declare Plaintiff the prevailing party;

C.  Enjoin Defendants from future disenfranchisement of detainees;

D.  Award compensatory damages;[4]

E.  Award legal costs, attorneys' fees, and expert witness fees, and

F.  Grant all other just and proper relief.

## JURY DEMAND

Plaintiff demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## DESIGNATION OF PLACE FOR TRIAL

Pursuant to Local Rule 40.2, Plaintiff Brenda Wood hereby designates Kansas City, Kansas as the place of trial.

---

[4] *Carey v. Piphus*, 435 U.S. 247, 264 n.22 (1978) (U.S. Supreme Court decisions "support the award of substantial damages simply upon a showing that a plaintiff was wrongfully deprived of the right to vote."); *see also Memphis Community School District v. Stachura*, 477 U.S. 299, 314-15 (1986) (Marshall, J., concurring).

Respectfully submitted,

  */s/ Joseph A. Kronawitter*
Robert A. Horn             KS Bar # 70254
Joseph A. Kronawitter     KS Bar # 19665
HORN AYLWARD & BANDY, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, Missouri 64108
Telephone: (816) 421-0700
rhorn@hab-law.com
jkronawitter@hab-law.com

Brian Timothy Meyers
Brian C. McCart
LAW OFFICES OF BRIAN TIMOTHY MEYERS
1044 Main Street, Suite 400
Kansas City, Missouri 64105
Telephone: (816) 842-0006
btmeyers@btm-law.com
bmccart@btm-law.com

ATTORNEYS FOR PLAINTIFF